UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NERU MATA'U, JR.<br>2408 Kaslin Drive<br>Modesto, CA 95355,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN M. McHUGH<br>Secretary of the Army<br>101 Army Pentagon<br>Washington, DC 20310,<br><br>    Defendant.<br><br><br>Also Serve:<br><br>Ronald C. Machen, Jr.<br>U.S. Attorney for the District of Columbia<br>U.S. Attorney's Office<br>555 4th Street, NW<br>Washington, DC 20530<br><br>Eric H. Holder, Jr.<br>Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 | Case No. _____ |

**COMPLAINT AND PETITION FOR REVIEW OF FINAL ORDER OF THE ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**

This is an action seeking judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, of a final order of the Army Board for Correction of Military Records ("ABCMR" or "Board").

**INTRODUCTION**

Neru Mata'u, Jr. served in the U.S. Army Reserves ("USAR") for over nine years, a period that included a fifteen-month deployment to Iraq in support of Operation Enduring

Freedom.  Mata'u developed several permanent medical impairments during his service that ultimately forced him to separate from the USAR.  But rather than grant him the medical retirement to which he was entitled, the Army honorably discharged Mata'u.

Mata'u subsequently filed a pro se application for the correction of military records with the ABCMR, seeking to change his honorable discharge to a medical retirement.  A medical retirement would give Mata'u access to a greater range of benefits and provide formal recognition that medical disability, not lack of desire to continue serving, caused his separation from the USAR.  After the Board denied his application, Mata'u retained counsel and submitted a request for reconsideration that included new evidence and arguments.  Despite being obligated by federal statute and regulation to forward Mata'u's request for reconsideration to the Board for proper adjudication, the Board's staff declined to take any action.

The refusal of the Board's staff to submit Mata'u's request for reconsideration to the Board for consideration on the merits violated federal law and requires this Court's intervention.  This Court should direct the Board to comply with its statutory and regulatory mandate and conduct a full merits review of Mata'u's request for reconsideration.

**JURISDICTION**

1. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.  This Court may award relief pursuant to the APA, 5 U.S.C. §§ 702–703, 706.

**VENUE**

2. Venue is proper in this District under 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff Neru Mata'u, Jr. is a former member of the USAR who served in Iraq, rose to the rank of Sergeant, suffered several permanent injuries while enlisted, and was honorably discharged on January 26, 2008.

4. Defendant John M. McHugh, Jr. is the Secretary of the Army and a named defendant in his official capacity. Secretary McHugh is authorized by 10 U.S.C. § 1552(a)(1) to correct any military record to remedy an error or remove an injustice.

## STATEMENT OF FACTS

5. Neru Mata'u, Jr. enlisted in the USAR on September 21, 1998, ultimately serving for over nine years. (Ex. A, at 2, 4.) He was honorably discharged on January 26, 2008. (*Id.* at 4.)

6. During his enlistment in the USAR, Mata'u was ordered to active duty and deployed to Iraq in support of Operation Enduring Freedom. (*Id.* at 2.) He served as a laundry and shower specialist in Iraq from April 23, 2003 until August 1, 2004. (*Id.*)

7. Upon leaving Iraq, Mata'u reported that he had developed several medical problems during his deployment, including a runny nose, fever, headaches, back pain, muscle aches, and diarrhea. (Ex. B, at 2.) The physician conducting Mata'u's post-deployment health assessment noted that Mata'u was to undergo further evaluation for a possible tear in his right rotator cuff. (*Id.* at 4.)

8. Mata'u was released from active duty on September 27, 2004 and continued his service in the USAR. (Ex. A, at 2.) About a year later, on October 1, 2005, an Army physician determined that a nonpermanent shoulder injury rendered Mata'u physically unable to perform certain activities and issued him a temporary physical profile. (Ex. C.)

9. On September 18, 2006, Mata'u extended his enlistment for a year by submitting a reenlistment eligibility worksheet. (Ex. A, at 3.) The worksheet stated that he had an injury and required evaluation before the Military Occupational Specialty Medical Retention Board. (*Id.*)

10. Less than a month later, on October 4, 2006, the Department of Veteran Affairs ("VA") issued a rating decision concluding that Mata'u had a combined disability rating of 50 percent. (*Id.*; *see also* Ex. D, at 2.) The VA determined that Mata'u suffered from several injuries linked to his military service: chronic sprain/strain of cervical spine; chronic sprain/strain of thoracic, lumbosacral strain; right shoulder tendinitis; left shoulder tendinitis; allergic/irritant rhinitis/sinus; and chronic diarrhea. (Ex. E, at 1–2; Ex. A, at 3.)

11. The Physical Review Board at the Human Resources Command in St. Louis, Missouri issued a report on Mata'u's medical fitness on February 22, 2007. (Ex. F; *see also* Ex. A, at 3.) The Physical Review Board concluded that Mata'u "does not meet medical retention standards," meaning that he was medically unable to continue service in the USAR under standards prescribed in the Army's regulations. (Ex. F, at 2; *see also* Ex. A, at 3.)

12. Five days later, on February 27, 2007, an Army physician determined that several permanent injuries rendered Mata'u unable to perform certain activities. (Ex. G.) As a result, the physician issued Mata'u a permanent physical profile for the following medical conditions: chronic low back pain with chronic strain/sprain of cervical and thoracic spine; bilateral shoulder tendinitis; post-traumatic stress disorder; and chronic diarrhea. (*Id.*; *see also* Ex. A, at 3.) The profile stated that Mata'u needed to be evaluated by a Medical Evaluation Board ("MEB") and Physical Evaluation Board ("PEB"). (Ex. G; *see also* Ex. A, at 3.) It also noted that Mata'u did not meet medical retention standards under the Army's regulations. (Ex. G.)

13. Apparently following up on the permanent physical profile's conclusion that Mata'u required evaluation by an MEB and PEB, the Command Surgeon at the Army Reserve Medical Command in Pinellas Park, Florida sent a letter to Mata'u on July 31, 2007.[1] (Ex. H.) The letter notified Mata'u that he needed to be assessed by an MEB. (*Id.*)

14. On August 31, 2007, Mata'u's commanding officer sent a memorandum to the Commander of the Army Reserve Medical Command in Pinellas Park, Florida in which he recommended that Mata'u be discharged from the USAR "[d]ue to [his] mental condition and physical limitations." (Ex. I; *see also* Ex. A, at 3–4.)

15. Despite Mata'u's clear entitlement to evaluation by an MEB for a final determination of his medical fitness for continued service, the Army failed to follow proper procedures and promptly convene an MEB. The Army's failure on this score left Mata'u in a state of limbo, neither able to reenlist nor secure a proper medical retirement. His commanders had informally deemed him unfit for continued service, which precluded his reenlistment. But the Army had not referred him to an MEB for a formal, final determination regarding his ability to remain in the USAR. Mata'u sought an opportunity to proceed before an MEB so that he could either be found fit for further service and allowed to reenlist, or judged medically unfit for further service and granted the benefits of a medical retirement.

16. In an effort to secure from the Army a proper, formal determination of his medical fitness for further duty, Mata'u sought the assistance of U.S. Representative Eni F.H. Faleomavaega. Representative Faleomavaega first wrote a letter to the U.S. House Army Liaison Division on June 19, 2007 to request an expedited resolution of Mata'u's medical status

---

[1] The copy of the letter obtained from Mata'u's service records omits the year of the date on which the letter was sent. Upon information and belief, the letter was written in 2007.

and fitness for further service. (Ex. J.) In response to Representative Faleomavaega's letter, the Army Reserve Command erroneously asserted that Mata'u had proceeded before an MEB and been deemed unfit in July 2007. (Ex. K, at 1.) Representative Faleomavaega, unaware that the Army Reserve Command had responded with inaccurate information, referenced this erroneous assertion in the second letter that he wrote, on January 15, 2008, in which he sought to follow up on his first letter. (*Id.*) Contrary to the assertion in Representative Faleomavaega's January 15, 2008 letter, Mata'u was never evaluated by an MEB.

17. Mata'u was honorably discharged from the USAR on January 26, 2008. (Ex. A, at 4.)

18. Mata'u filed a pro se application for the correction of military records with the ABCMR on November 23, 2009. (Ex. L.) He requested that the ABCMR change his honorable discharge from the USAR to a medical retirement. (*Id.* at 3.) Mata'u claimed that he should have been medically retired because he received a VA disability rating of 50 percent and was prevented from reenlisting. (*Id.*)

19. The ABCMR denied Mata'u's application in an October 14, 2010 decision. (Ex. A, at 5–6.) The Board noted the absence of any record of an MEB or PEB proceeding undergone by Mata'u. (*Id.* at 4.) But the Board then incorrectly assumed that an MEB had evaluated Mata'u based on Representative Faleomavaega's January 15, 2008 letter, which referenced the Army Reserve Command letter that erroneously stated that Mata'u had gone before an MEB in July 2007. (*Id.*) Turning to Mata'u's claim that he should have been medically retired because the VA assigned him a disability rating of 50 percent, the Board responded that the VA's disability determinations are distinct from and not binding on the Army when the Army evaluates whether a member is no longer medically fit for service. (*Id.* at 5.)

20. Mata'u retained counsel to submit a request for reconsideration of the Board's decision denying his original pro se application. (Ex. M.) The request for reconsideration, submitted on October 13, 2011, included new evidence and arguments. Where Mata'u's original application argued only that he should have received a medical retirement because the VA had assigned him a 50 percent disability rating and he had been barred from reenlisting, the request for reconsideration contended that the Army had failed to follow proper procedures that, if followed, would have compelled a medical retirement (*id.* at 2). In particular, the request for reconsideration maintained that Mata'u was never evaluated by an MEB or PEB prior to his discharge and that the Army violated its regulations by failing to convene an MEB. (*Id.* at 4–6.) Had Mata'u been given an MEB and PEB, he would have been found medically unfit for further service, rated at least 30 percent disabled, and medically retired. (*Id.* at 2.) The reconsideration request also included new evidence: a copy of the letter sent to Mata'u on July 31, 2007 referring him to an MEB (*see id.* at 3; *see also* Ex. H), and a statement by Mata'u that he was never evaluated by an MEB or PEB (*see* Ex. M, at 3, 11). Because the newly presented letter noted that Mata'u had not proceeded before an MEB as of the last day of July 2007, it demonstrated the inaccuracy of the Army Reserve Command's response to Representative Faleomavaega's first letter, which asserted that Mata'u had been evaluated by an MEB in July 2007. The Army Reserve Command's erroneous response, in turn, served as the basis for Representative Faleomavaega's statement in his second letter that an MEB had found Mata'u unfit in July 2007—the same statement on which the Board relied to conclude that Mata'u had been evaluated by an MEB.

21. In a brief decision issued on July 10, 2012, the ABCMR refused to adjudicate Mata'u's request for reconsideration. (Ex. N.) The staff of the ABCMR concluded that,

although the request was timely submitted, Mata'u had failed to provide new evidence or argument. (*Id.*)  For that reason, the staff declined to forward the request to the Board and instead returned it to Mata'u "without action." (*Id.*)

22.     In response to the Board's refusal to consider Mata'u's request for reconsideration, counsel for Mata'u sent a letter to the Board on August 9, 2012 and resubmitted the request. (Ex. O.)  The letter specified the new arguments raised in the original request and asked the Board to review them. (*Id.* at 1.)

23.     An official from the Army Review Boards Agency ("ARBA"), which oversees the ABCMR, responded in a September 26, 2012 letter to Mata'u. (Ex. P.)  The letter stated that the Board's staff had "determined the evidence and arguments presented [in the request for reconsideration] were insufficient to warrant reconsideration." (*Id.*)

24.     Counsel for Mata'u responded to the ARBA's letter in a December 26, 2012 letter in which he argued that the Board's continued refusal to consider the request on the merits violated federal law. (Ex. Q, at 1.)  The letter first contended that the Board's staff had exceeded its authority by weighing whether the evidence was sufficient to merit reconsideration, when the staff's role is properly confined simply to determining whether any new evidence or argument exists. (*Id.*)  The letter also identified the new arguments and evidence presented in the request for reconsideration and urged the staff to submit the request to the Board for evaluation. (*Id.* at 2.)

25.     The ARBA responded in a February 2, 2013 letter. (Ex. R.)  The letter stated that the staff of the ABCMR had performed a second review of Mata'u's request for reconsideration and had again determined that "no new evidence or argument was presented to warrant reconsideration of its initial decision." (*Id.*)  It also informed counsel for Mata'u that Mata'u

"has the option to seek relief in a court of appropriate jurisdiction." (*Id.*) "Unless remanded by an appropriate court," the letter concluded, "the Board and its staff will not consider any more requests for reconsideration of its initial decision to deny Mr. Matau his requested relief." (*Id.*)

## CLAIM FOR RELIEF

The ABCMR staff's refusal to submit Mata'u's request for reconsideration to the Board for review on the merits violated the APA because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

First, the failure of the Board to consider Mata'u's request for reconsideration on the merits violated federal statutory and regulatory provisions. The Board itself, not its staff members, must adjudicate requests for reconsideration that contain new evidence or argument. 10 U.S.C. § 1552(a)(1); 32 C.F.R. § 581.3(g)(4)(i). Army regulations require the Board's staff to forward a timely request for reconsideration that contains new evidence or argument to the Board for adjudication on the merits. 32 C.F.R. § 581.3(g)(4)(i). Mata'u's request for reconsideration was timely and contained new evidence and argument. The Board's staff thus violated federal law when it refused to present the application to the Board for review on the merits.

Second, the Board's refusal to adjudicate Mata'u's request for reconsideration was arbitrary and capricious because the Board failed to offer an adequate explanation for its action. The Board eschewed its responsibility to respond to Mata'u's nonfrivolous arguments that he had satisfied the criteria for reconsideration. Specifically, the Board did not explain why the new evidence and argument offered by Mata'u was insufficient for the staff to submit the request for reconsideration to the Board for a merits review.

## RELIEF REQUESTED

Plaintiff Neru Mata'u, Jr. respectfully requests that this Court take the following action:

1.  Remand the July 10, 2012 order refusing to adjudicate Mata'u's request for reconsideration to the ABCMR and direct the Board to resolve the request on the merits, in a decision adequately stating the factual and legal basis for the determination reached, within thirty days; and

2.  Grant Mata'u such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Donald P. Salzman, DC Bar No. 479775
Michael A. McIntosh, DC Bar No. 1012439
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7000
Donald.Salzman@probonolaw.com
Michael.McIntosh@probonolaw.com

March 7, 2014